**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x

GUVERA IP PTY, LTD.

    Plaintiff,

        v.

SPOTIFY, INC.,

    Defendant.

-------------------------------------------------------x

**COMPLAINT**

**JURY TRIAL DEMANDED**

## Nature of the Action

Guvera streams music and entertainment free of charge to the user. Guvera offers this service on the strength of the Guvera source code.

Guvera invested over $20 million writing source code that allows Guvera to recognize specific characteristics of the Guvera user. With an in-depth knowledge of the individual user, Guvera matches advertisements with music and entertainment requested by this user whom Guvera knows.

Guvera has licensed the technology. For example, the Indian streaming service Hungama is authorized to use the Guvera method. There are other companies—including a large, well-known American technology company—who have licensed and are authorized to practice the Guvera method. Hungama is emphasized here because Hungama is willing to offer evidence in this proceeding regarding the long-felt need, commercial success, and novelty of this invention.

Guvera offered to license the technology to Spotify, however Spotify would not consider a license.

## Parties

1. Guvera IP Pty Ltd ("Guvera" or "Plaintiff") is an Australian corporation with its principal place of business at Unit 3, 106 Scarborough St, Southport 4215, Australia.

2. Spotify USA, Inc. ("Spotify USA" or "Defendant") is a company organized under the laws of the State of Delaware with its principal place of business at 4 World Trade Center, 150 Greenwich Street, 62nd Floor, New York, New York, 10007.

## Jurisdiction and Venue

3. This action arises under the patent laws of the United States, 35 U.S.C. §§ 101 *et seq*.

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

5. This Court may exercise personal jurisdiction over Spotify, which conducts continuous and systematic business in New York and in this District. Spotify maintains corporate offices in the Southern District. This patent-infringement case arises directly from Spotify's continuous and systematic activity in this District. In short, this Court's exercise of jurisdiction over Spotify would be consistent with traditional notions of fair play and substantial justice.

6. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and 1400(b).

## Infringement of U.S. Patent No. 8,977,633

7. Guvera hereby realleges and incorporates by reference, as if fully set forth herein, the allegations of paragraphs 1-6 above.

8. Guvera is the exclusive owner of U.S. Patent No. 8,977,633 (the "'633 patent").

9. The '633 patent is valid and enforceable.

10. Claim 1 of the '633 is directed to patentable subject matter: an improved process of matching digital content, advertisements, and users based on a personality recognition technique.

11. Specifically, claim 1 of the '633 patent requires the following set of steps:

> wherein each content profile identifier of each piece of electronic content is given a weighting factor or ranking and a quantitative value is given to each piece of electronic content in relation to each content profile identifier,
> wherein the quantitative value together with the weighting factor or ranking of each content profile identifier is used to calculate a value, or set of values related to each content profile identifier, for each piece of electronic content;
> wherein the value, or set of values, is used *to calculate a degree of association of the representative electronic content pieces with electronic content pieces by using the variation of the representative electronic content pieces compared to the electronic content pieces and including an electronic content piece in the matched content pool based on the degree of association* . . . .

('633, col. 13:44-60 (emphasis added).)

12. Claim 1 calculates a "degree of association" to reflect a depth to the understanding the Guvera method has of the user. The Guvera source code reflecting claim 1's calculation of a "degree of association" is available for inspection by contacting undersigned counsel.

13. Claims 2 through 15 depend on the limitations of claim 1, including calculating the "degree of association." Claims 1 through 15 teach one of ordinary skill in the art how to improve prior art on-line advertising methods through, *inter alia*, calculation of the "degree of association."

14. Claim 2: "A computer implemented method as claimed in claim 1, wherein the quantitative value is a numerical value." Claim 2's calculation of a "degree of association" uses a

3

numerical value. Guvera source code reflecting claim 2's calculation of a "degree of association" is available for inspection.

15. Claim 3: "A computer implemented method as claimed in claim 1, wherein the quantitative value is or includes non-numerical contextual data. Guvera source code reflecting claim 1's calculation of a "degree of association" is available for inspection.

16. Claim 7: "A computer implemented method as claimed in claim 1, wherein the content profile identifiers are reactive in real-time." Guvera source code reflecting claim 7's "reactive content profile identifiers" is available for inspection.

17. Claim 9: "A computer implemented method as claimed in claim 1, wherein a content matching engine searches every piece of electronic content in the content database."

18. Claim 10: "A computer implemented method as claimed in claim 1, wherein a content matching engine searches electronic content pieces based on chosen parameters related to the content profile identifiers." Guvera source code reflecting claim 9's and claim 10's "content matching engine" is available for inspection.

19. Claim 16: "A computer implemented content matching system for generating a pool of matched content pieces from an available pool of content pieces based on a selected sample, the system including: at least one computer having one or more computer processors communicatively coupled to at least one or more computer-readable data storage devices at least one consumer database containing a plurality of consumer profiles with consumer preference identifying data, the at least one consumer database stored on a computer-readable data storage device, at least one brand database containing details of brand clients, each having one or more branding parameters stored on a computer-readable data storage device, at least one content

database containing a plurality of pieces of electronic content provided by at least one content provider with each piece of electronic content having one or more content profile identifiers stored on a computer-readable data storage device, selecting, by a brand client, a plurality of representative electronic content pieces based on one or more branding parameters of the brand client to convey a brand identity, testing the selected plurality of representative electronic content pieces by an administrator using a data processor against a set of constraints to establish that a first constraint is satisfied, the first constraint comprising any one or more of: determining an asset type for each of the representative electronic content pieces of the selected plurality, and determining that the asset types for the selected plurality includes a minimum number of asset types; determining an asset type for each of the representative electronic content pieces of the selected plurality, and determining that the selected plurality includes a minimum number of any one or more of performers, artists, publishers, producers, or albums for each asset type of the selected plurality; or determining that a particular asset type is included in the selected plurality, and determining that the selected plurality includes a minimum number of representative electronic content pieces having the particular asset type; and generating a pool of matched electronic content pieces by: selecting a plurality of electronic content pieces from the available pool based on comparing the one or more content profile identifiers of the representative electronic content pieces with one or more content profile identifiers of each content piece in the available pool of electronic content pieces to identify a set of matches, and including the set of matches in the matched electronic content pool only if a second constraint is satisfied, the second constraint comprising determining that the set of matches of electronic content pieces include a minimum number of pieces of content for each type of content, wherein each content profile

identifier of each piece of electronic content is given a weighting factor or ranking and a quantitative value is given to each piece of electronic content in relation to each content profile identifier, *wherein the quantitative value together with the weighting factor or ranking of each content profile identifier is used to calculate a value, or set of values related to each content profile identifier, for each piece of electronic content; wherein the value, or set of values, is used to calculate a degree of association of the representative electronic content pieces with electronic content pieces by using the variation of the representative electronic content pieces compared to the electronic content pieces and including an electronic content piece in the matched content pool based on the degree of association*; wherein a minimum number of electronic content pieces must be chosen in order to define the representative electronic content pieces prior to testing the representative electronic content pieces against the set of constraints. ('633, cols. 14:52-16:31 (emphasis added).)

20. *See supra* ¶ 12 regarding source code embodying the claim 16 system calculating a "degree of association."

21. The claims of the '633 patent teach how to match digital content with a particular user. For example, the claims contain two mandatory constraints that must be satisfied before the degree of association is calculated. Further, the claims teach one of ordinary skill in the art how to calculate the "degree of association."

22. The patent examiner amended the claims of the '633 to put the claims in a condition to be allowed over the prior art content matching systems. Attached hereto as "<u>Exhibit A</u>" is the Reason for Allowance containing the examiner's added language to the claims teaching how to calculate a "degree of association."

23. Spotify infringes claim 1 when Spotify delivers its streaming service free of charge to the user. Spotify provides a consumer database with user profiles. "Engage demographic-based and interest-based audience segments, crafted by analyzing our users' streaming behavior on Spotify alongside their broader interests and behaviors, fueled by leading third-party data providers in select markets." https://www.spotifyforbrands.com/en-US/audiences/.

24. Spotify also provides a brand database required by claim 1: "Tropicana is practically synonymous with orange juice — but OJ isn't always thought of as an on-the-go drink. By bringing their 'Made to Go' campaign to Spotify, Tropicana set out to connect with consumers in key moments as they shuffle from one activity to the next, driving home the message that a single-serve bottle of orange juice is the perfect accompaniment to a busy, active life. Tropicana made the most of Spotify's streaming intelligence by targeting commuters, fitness enthusiasts, grocery buyers, and other specific segments that matched their messaging. They also used playlist targeting, reaching people as they streamed in moments like working out, getting ready, traveling, focusing, and chilling out. Plus, they used in-car targeting to reach streamers who were really on the move with audio." https://www.spotifyforbrands.com/en-US/ad-experiences/tropicana/ .

25. Spotify provides the content database of claim 1, including profile identifiers to each piece of digital content: "That time you skipped Britney to hear The Beatles. That time you played 'Young Dumb & Broke' 117 times in a row. That time you made a Road Trip playlist with your friends. Every swipe, search, skip, and shuffle tells us a story about our audience." https://www.spotifyforbrands.com/en-US/audiences/.

26. Spotify tests a representative set of digital content that meets branding parameters in order to satisfy the first constraint of claim 1: "To motivate listeners to shop at Target while helping families have fun in the kitchen, Spotify and Target created 'Mealtime Maestro,' a branded version of Spotify's turkey timer. Just enter your bird's weight, pick your favorite tempo, and voila—out pops a fully-baked playlist in the time it takes to cook your turkey. 'Mealtime Maestro' proves that playlists can reflect more than our moods. They have the power to enhance everyday moments like studying for an exam, sweating through a workout, and yes, even cooking a fifteen pound fowl. Target joined the kitchen conversation in an authentic way, and you can too. With the rise in connected device listening, especially in the kitchen, it's easier than ever for listeners to pair their prep time with a side of smooth jazz or a savory podcast. Or maybe you want to skip the food pairing altogether and simply 'taste' the music itself? That's what we did with Brazilian brand Tramontina in their 'Flavor of Songs' campaign. Inspired by the phenomenon of synesthesia—the blending of senses that allow some people to 'taste' sounds or 'feel' colors—Tramontina classified millions of songs available in Spotify's database. If you've ever wondered what Beethoven's Symphony No. 5 in C Minor tastes like, wonder no more: Foie gras terrine with salmon caviar and cold barley. (Of course.)" https://ads.spotify.com/en-US/news-and-insights/how-brands-can-blend-into-home-cooking-moments.

27. Spotify generates a pool of matched content according to claim 1: "We built a microsite that offers a custom running playlist for each listener who engages with the digital experience, influenced by their recent listening history, the length and intensity of their run, and their current weather conditions. In other words, a highly personalized playlist powering their

every stride. A series of dynamic, contextually relevant audio ads on Spotify brought fans flocking to the experience. After the workout, listeners were invited to log their jog on the site and receive free beer and other rewards in return." (https://ads.spotify.com/en-US/inspiration/michelob-ultra-case-study)

28.     Spotify calculates the "degree of association" according to the teaching of claim 1: "**Age, gender, location, and platform** Connect with your target audiences across platforms with Spotify's first-party age, gender, and location data. **Interest** Reach highly relevant audiences based on their podcast, playlist, and platform preferences. **Real-time context** Reach listeners as they soundtrack specific moments throughout their day. **Genre** Deliver your message immediately after a user has listened to a specific genre. **Fan base** Target known fans of an artist you're promoting or fans of other artists (available when promoting an artist or music event)." (https://ads.spotify.com/en-US/help-center/targeting-options. (emphasis in original.) Plaintiff incorporates paragraphs 23 through 27 in support of Plaintiff's allegation that Defendant calculates the "degree of association" according to the teaching of claim 1.

29.     Spotify meets claim 1's requirement of a minimum number of pieces of content to define the "representative content" *before* the two constraints are satisfied. "Interest targeting allows you to reach relevant audiences based on the activities and topics they're passionate about. Interest categories are informed by users' recent streaming behavior, including their podcast, playlist and platform preferences. You can select multiple interest categories to expand your potential audience." (https://ads.spotify.com/en-US/help-center/interest-targeting.)

## Prayer for Relief

WHEREFORE, Guvera prays for the following relief against Spotify:

(a) Judgment that Spotify has directly infringed the '633 patent;

(b) A reasonable royalty;

(c) Pre-judgment interest and post-judgment interest at the maximum rate allowed by law;

(d) Post-judgment injunction; and

(e) Such other and further relief as the Court may deem just and proper.

## Demand for Jury Trial

Guvera demands a trial by jury on all matters and issues so triable.

Date: <u>May 20, 2021</u>                               Respectfully Submitted,

<u>/s/ Matthew M. Wawrzyn</u>
Matthew M. Wawrzyn (application *pro hac vice* pending)
matt@wawrzynlaw.com
WAWRZYN LLC
200 Randolph Street, Suite 5100
Chicago, IL 60601
(312) 235-3120

*Counsel for Guvera IP Pty Ltd.*